Davis, J.,
delivered the opinion of the court:
While plaintiff’s intestate was cousul-general in Japan, he certified invoices for goods intended at that time to be shipped through the United States to a foreign port. The fees for this service he would be entitled to retain as his personal emolument, under the decision in Mosby’s Case, were nothing else developed as to the transaction. It appears, however, that some of the goods covered by these invoices were in fact stopped in transit while within the territorial jurisdiction of the United States, were entered for consumption within the United States, and did not in fact leave the United States. There is no intimation of any fraud, collusion, or bad faith in any of the transactions, nor is there reason to suspect either. The shipper, when he procured the certificates to the invoices, intended that the goods should go beyond the United States, The certification, therefore, was an unofficial act, and the fee was the personal emolument of the consul-general. This court so decided in Mosby’s Case, saying:
“ The third item of charge in claim is for certifying invoices for goods in transit through the United States to other countries, $5,805.
“This amount was collected by claimant during the time he officiated as consul at Hongkong, and was paid into the Treasury. For the purpose of avoiding delay and annoyance the shippers of goods through the United States procured from the consul what is called ‘ transit invoices.’ They are not the invoices referred to in the sections of the statute above quoted, *67 but such invoices as accompanied goods in transit through, the United States. The law did not require the consul to issue such certificates, and hence no provision was made for them either in the regulations of 1874 or 1881. Nor do the regulations of the Treasury Department require the consuls to perform any duty in relation to such goods.” (Gen. Reg. Treas. Dept., 1884, p. 361; Mosby v. United States, 34 C. Cls. R., 13.)
The Supreme Court affirmed this court, saying:
“The item of $5,806, which was allowed, is covered by finding 9, and is for fees received for certificates of shipment of merchandise in transit through the United States to other countries. These were not the invoices referred to in sections 2853 and 2855 of the Revised Statutes, either as they originally stood or as they were amended by the act of June 10,1880. The law did not require the consul to issue those certificates; no provision was made for a fee for them in the regulations of 1874, or in those of 1881; and it does not appear that the regulations of the Treasury Department required a consul to perform any duty in relation to such goods. This item was, therefor, properly allowed.” (United States v. Mosby, 133 U. S. R., 285.)
There therefore is left for us but one point, viz, W as the character of the consul-general’s fee determined by the facts existing at the time he performed the service and did he then become entitled to the fee, or was his right to the fee to be determined only after the goods had reached a final destination somewhere at some indefinite time and after an undetermined delay — that is, was the consul-general bound to follow these goods until they were actually consumed in Havana, Buenos Ayres, London, or St. Petersburg, or were his rights determined and his responsibilities ended when in good faith he certified the invoices and received his pay?
The statement of the proposition seems to us to carry its answer. When the invoices were certified, it was intended that the goods should go beyond the United States. That being so, the certification was unnecessary in law, the fee was unofficial, and the consul-general might retain it. The transaction was then complete and ended. Later we reach another transaction absolutely disconnected from the first one. To this transaction the consul-general was not a party, and of it he had no knowledge. The owners of the goods stopped them in transit and, presumably, paid the duties, if there were any due. This was a transaction absolutely independent of the previous *68 consular act performed in Japan, and could not revert to tbat act to change its character.
When the consul charged this fee, he was entitled to retain it, and the subsequent change of the shippers’ plans should not retroact to divest him of his title to the fee. The defendants might by statute or regulation have required the shipper to pay as a condition to entry for consumption in the United States a fee equal to the consular fee for certifying the invoices, and thus have adequately protected themselves.
Former judgment affirmed.